QUESTION:
Is the City of Hollywood authorized by law to regulate the operation of motor-propelled bicycles or `mopeds' by requiring that `moped' operators and riders wear protective headgear and eye-protective devices, while operating or riding such motor-propelled bicycles within the city limits, which would otherwise be required for operators and riders of motorcycles?
SUMMARY:
The Uniform Traffic Control Law expressly provides for uniform traffic laws and traffic ordinances throughout the state and in all its municipalities and prohibits the enactment or enforcement of any traffic ordinances in conflict therewith; the regulation of the operation of motor-propelled bicycles or `mopeds' upon the roadways of municipalities, the manner and places of their operation, equipment required thereon, and equipment, if any, for the operators or riders thereof is governed by s. 316.111, F. S., as amended, and other related statutes. Chapter 316, F. S., as amended, effectively preempts to the state the regulation of motor-propelled bicycles or `mopeds.' Therefore, municipalities are not authorized by law to require that motor-propelled bicycles or moped operators and riders wear protective headgear and eye-protective devices, while operating or riding such bicycle/mopeds within the city limits, which would otherwise be required by law for motorcycle operators and riders.
Your question is answered in the negative.
Chapter 316, F. S., is entitled `State Uniform Traffic Control' and its stated purpose is provided in s. 316.002, F. S., as follows:
 It is the legislative intent in the adoption of this chapter to make uniform traffic laws to apply throughout the state and its several counties and uniform traffic ardinances to apply in all municipalities. The legislature recognizes that there are conditions which require municipalities to pass certain other traffic ordinances in regulation of municipal traffic that are not required to regulate the movement of traffic outside such municipalities. Section 316.008, F. S., enumerates the areas within which municipalities may control certain traffic movement or parking in their respective jurisdictions. This section shall be supplemental to the other laws or ordinances of this chapter and not in conflict
therewith. It is unlawful for any local authority to pass or attempt to enforce any ordinance in conflict with the provisions of this chapter. (Emphasis supplied.)
Section 316.008, F. S., provides in pertinent part as follows:
 (1) The provisions of this chapter shall not be deemed to prevent local authorities, with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power, from:
(h) Regulating the operation of bicycles.
Section 316.003(2), F. S., defines `bicycle' to include a `moped' propelled by a pedalactivated helper motor with a maximum rating of 1 1/2 brake horsepower. No provision of s. 316.008, F. S., empowers municipalities to require any equipment on motor-propelled bicycles or `mopeds' (cf. ss. 316.243-316.249, F. S., with respect to motorcycles and motor-driven cycles) or any protective equipment or devices for the operators or riders of bicycles/mopeds (cf. s. 316.287, F. S., for motorcycle operators or riders). Section 316.111, F. S., does require certain lighting and reflector equipment on bicycles after sundown and generally prescribes regulations for the manner of operating or diding upon bicycles and the places bicycles may be operated.
The answer to your question depends on what the Legislature meant by the allowing municipalities to regulate the operation of bicycles. Section 316.11(3), F. S., provides that the provisions of s. 316.111, F. S., governing bicycle regulations shall not apply upon a street set aside as a play street as authorized by Ch. 316, F. S., or as designated by municipal authority. Also see
s. 316.008(1)(p) authorizing municipalities to designate and regulate traffic on play streets. In all other respects the operation of motor-propelled bicycles or `mopeds' upon the roadways or streets of municipalities, the manner of their operation, the equipment required thereon, and any equipment for the operators and riders thereof is governed and regulated by s. 316.111, F. S., (1976 Supp.), and related sttautes such as Chs. 320, 322, and 324, F. S.
As the purpose section provides above and as the title of the chapter indicates, the intent of the Legislature is to have uniform traffic laws and ordinances applicable throughout the state and in all municipalities. While that section provides that municipalities `may control certain traffic movement or parking in their respective jurisdictions,' the purpose section makes clear that any such ordinance-marking authority is `supplemental to the other laws or ordinances of this chapter and not in conflict therewith.' That section further clarifies the purpose of the Florida Uniform Traffic Control Law by declaring action by a local authority to pass or enforce any ordinance in conflict with the provisions of Ch. 316, F. S., to be unlawful.
The Legislature defines a moped as a bicycle in s. 316.003, F. S., and changed the definition of `bicycle,' `motorcycle,' and `motor-driven cycles' and excludes motor-propelled bicycles or `mopeds' from the definition of `motor vehicle,' `motor-driver cycles,' and `vehicle' by Ch. 76-286, Laws of Florida, as reference to the title thereof clearly discloses, and provides regulations for such motor-propelled bicycles or `mopeds' in s. 316.111, F. S. In the latter section the Legislature provided special regulations in subsections (14) and (15) applicable only to the operation of bicycle/mopeds. More importantly, the Legislature did not prescribe in these special regulations for moped operators the requirements imposed on motorcycle riders by s. 316.287, F. S., which include the wearing of protective headgear and eyegear. Effectively, by reclassifying mopeds from motorcycles or motor-driven cycles to bicycles, the Legislature has said that the uniform law throughout the state is that moped operators shall not be subject to the requirements placed on motorcycles operators and riders of wearing protective headgear and eyegear and, in fact, shall be treated as bicycle operators except for the requirements of s. 316.111(14) and (15), which are special regulations or exceptions operating uniformly throughout the state and in all municipalities.
Further evidence that the intent of the Legislature in enacting Ch. 316, F. S., was to provide uniform traffic laws and traffic ordinances is found in s. 316.007, which provides in pertinent part as follows:
 The provisions of this chapter shall be applicable and uniform throughout the state and in all political subdivisions and municipalities therein, and no local authority shall enact or enforce any ordinances on a matter covered by this chapter unless expressly authorized . . . . (Emphasis supplied.)
On consideration of the foregoing it is clear that the Legislature intended, by its comprehensive action in enacting Ch. 76-286, Laws of Florida, classifying motor-propelled bicycles or `mopeds' as bicycles and determining how they were to be regulated on a uniform state-wide basis, to require that moped operators or riders be treated as bicycle operators or riders uniformly throughout the state and in all the municipalities therein. The Legislature by enactment of Ch. 316, as amended aforesaid, and by making it unlawful to enact, and prohibiting the enactment or enforcement of, any traffic ordinances in conflict therewith has effectively preempted the regulation of bicycle/mopeds to the state. Furthermore, because moped operators had, prior to such action, been required to wear the same protective devices as other motorcycle riders according to the Department of Highway Safety and Motor Vehicles, the reclassifying of mopeds as bicycles clearly demonstrates that the Legislature intended that moped riders be relieved of the requirements of wearing such protective devices throughout the state.
Looking beyond the express purpose and intent found in the language of the statute, it is clear from the legislative history that the Legislature intended that the law treating bicycle/mopeds as bicycles be applied uniformly throughout the state and in all municipalities in the state, and that the Legislature in enacting Ch. 76-286, supra, has demonstrated its intent to free moped operators from the requirements imposed on motorcycle operators and riders of wearing protective headgear and eyegear throughout the state and all municipalities therein.
Chapter 71-135 creating Ch. 316, F. S., expressed the clear legislative purpose of its enactment in pertinent part as follows:
 . . . WHEREAS, the traffic in the remaining incorporated municipalities not controlled by chapter 186 is controlled by a hodgepodge of ordinances which vary as to the language and penalty, and . . . WHEREAS, from the standpoint of the public, observance of traffic rules is largely conditioned on the clarity . . . and uniformity of the regulations, and . . . WHEREAS, nonuniform laws and ordinances are a source of inconvenience and hazard to the motorist and pedestrian alike, and contribute to accidents, traffic snarls, and congestion, increase the administrative and enforcement burdens of governmental agencies, and raise serious barriers to interstate and intrastate travel and commerce, and . . . WHEREAS, the following proposed chapter 316, Florida Statutes, is a consolidation of the existing state traffic laws . . . the traffic ordinances contained in chapter 186, Florida Statutes, . . . into one workable uniform law throughout the state and all its municipalities . . . .
It is just such a situation as the one in question, in which a municipality seeks to impose requirements on bicycle/moped riders that are inconsistent with the rest of the state, that the Legislature sought to avoid by passing the Uniform Traffic Control Law. Consider, for example, the plight of the moped rider who begins to travel from his home outside the city limits, enters Hollywood where he would be required to put on protective headgear and eye-protective devices, and then travels to Ft. Lauderdale which has additionally required him to wear other protective ear, nose, and throat or other protective devices. Such `serious barriers to interstate and intrastate travel' are to be avoided under the Florida Uniform Traffic Control Law, as amended.
Furthermore, in the 1977 legislative session, the Legislature considered requiring protective headgear and eye-protective devices for moped operators and riders but did not do so. Such action or nonaction demonstrates both that the Legislature did not want to impose such protective gear or device requirements on moped operators and riders and that it was the legislative body who possessed the power to make this decision rather than a municipality.
Prepared by: David J. Baron Assistant Attorney General